Eva Werner *v.* Michael Kelly, her husband.

Where, at the time of marriage, the wife had a stock in trade which, by the joint industry of herself and husband was increased, the stock thus acquired was community property; but on a separation of property between the spouses, it was chargeable with the value of the stock which the wife had on hand at the time of the marriage.

APPEAL from the Fourth District Court of New Orleans, *Reynolds* J. *Roselius,* for plaintiff, cited C. C. 2361, 2362, 2363—16 La. Rep. 5.

*T. W. Collins* and *W. W. W. Wood,* for defendant and appellant, cited 5 N. S. 257; 11 La. R. 537.

Buchanan, J. This is a suit for separation of bed and board, on the grounds, 1st, of ill treatment; 2d, of public defamation; 3d, of habitual drunkenness.

As to the two first grounds, it suffices to say, that the evidence shows that blows were interchanged between the parties on various occasions; also, that they were in the habit of indulging in a strain of vulgar abuse towards each other, which ought not to be dignified with the title of defamation.

As to the charge of habitual intemperance made against the defendant, it is abundantly proved by his own witnesses, not to speak of the numerous witnesses called by plaintiff. Under the provisions of the Act of 1848, (page 57, Session Acts,) the plaintiff is, therefore, entitled to the separation awarded by the judgment of the District Court.

Upon another point, however, her case is far from being so clear. Her petition alleges "that when she was married to defendant, she owned as her separate property, a certain undertaker's establishment, consisting of hearses, carriages, horses, and the other appurtenances of an establishment of that kind; that she carried on said establishment since her marriage with defendant." She prays that she be authorized to administer her separate property and business without the interference of her said husband; that he be enjoined not to interfere with the administration of her separate and paraphernal property, and that judgment be rendered decreeing (besides the separation of bed and board,) that plaintiff is the exclusive owner of the property described in the petition.

The answer traverses these averments of the petition, "denies that any of the property now in possession of plaintiff or defendant belongs to plaintiff in her separate right," and that "it is all community property," and that the horses, carriages, hearses, and other appurtenances of the undertaker's shop and business, have been "acquired since marriage out of the joint labor of defendant and his wife, the plaintiff."

Upon this issue, the proof is as follows: The plaintiff's first husband, *William Schmidt,* carried on the business of undertaker in this city. He died on the 2d of December, 1848. On the 5th of the same month his widow, the present plaintiff, presented a petition to the District Court, praying for an inventory of *his* estate. The inventory was accordingly made by a notary public

on the 18th of January, 1849, and includedt he stock in trade of the undertaker's business, consisting of coffins, (number not mentioned, but estimated at fifty dollars,) glass show cases, a desk, three hearses with trimmings and harness, and four horses. In the short interval which elapsed until her second marriage, plaintiff continued her late husband's business; and was married on the 9th March, 1849 to the defendant.

Several witnesses prove that the business has greatly increased since the marriage of plaintiff and defendant, and that testimony is corroborated by an inventory made by the Sheriff in executing a writ of sequestration applied for by plaintiff in December, 1852, in a suit which was discontinued in February, 1853, and which is in evidence herein. It is proved that of the old stock in trade of plaintiff's first husband nothing remained at the institution of this suit, but one hearse and one or two horses. The evidence is somewhat conflicting in relation to the management of the business; but on the whole, we are satisfied that both parties have given their attention to it, until the dissipated habits into which the husband had fallen of late, made him neglect his business. The sign over the door was "*Michael Kelly*, undertaker," and the business was transacted in his name.

Upon this evidence, we think the District Court erred in decreeing the undertakers' establishment to be paraphernal property of the plaintiff. It is composed, in its present shape of effects acquired by the industry of both the spouses since their marriage, and must therefore be viewed as property of the community. The plaintiff is indeed entitled to charge the community with the estimated value of the stock in trade as shown by the inventory of her first husband, as this has been consumed in the prosecution of the business.

It is therefore adjudged and decreed that the judgment of the District Court be reversed; and proceeding to render such judgment as should have been rendered by the Court below, it is decreed that there be separation of bed, board and property between the plaintiff and defendant; that the custody of the minor *David Kelly*, issue of their marriage, be given to plaintiff, that the movable property comprised in the inventory made by the Sheriff and annexed to the writ of sequestration in the suit No. 5827 in the Fourth District Court of New Orleans, be deemed common property of plaintiff and defendant, subject to a privilege in favor of plaintiff for the sum of three hundred and eight dollars and fifty cents, ($308 50), estimated value of movables in the inventory of plaintiff's first husband; that the house and lot, No. 211 Tchoupitoulas street, be also deemed common property, subject to a tacit mortgage in favor of the children of plaintiff by her first husband, for the sum of one thousand dollars, being so much received by the plaintiff and defendant for account of said children from their under tutor, *Jacob Mehle;* that the slave *Joe* and the real estate comprised in the inventory of plaintiff's first husband, *William Schmidt*, be deemed to be the separate property of plaintiff, as regards the defendant; that the cause be remanded to the District Court to make a partition of the common property; that the costs of the suit in the Court below already incurred be paid by the defendant, those of the appeal by plaintiff and appellee, and cost of partition to be paid by the mass.